against Union Square Condominium.  Good morning, or good afternoon, Your Honor, and may it please the court. My name is Jonathan Parker, and I represent the appellant, Holly Geraci. Although I represent the appellant, this case is not about Holly Geraci. This case is not about the dogs at Union Square, nor about dogs generally. This case is not about the elevators at Union Square. Excuse me. Every case is about the litigants, unless you're asking for an advisory opinion, which we don't give. So please do concentrate on the litigants. That's what this suit is about. And I understand that, but I also think that the case involves some broader principles of law which require this court's opinion. With that said— Now, one of those, I think, would be that, in the brief, you argue that a defendant can challenge the level of impairment, but not the existence of the condition. Wouldn't that mean if a plaintiff argued that she needed to use a wheelchair because she had a broken hip, the defendant could be limited to challenging only the level of impairment, but could obtain extra aid to establish that the plaintiff did, in fact, have a broken hip at all? What in the statute would require such a distinction between the condition and the impairment? Well, so I think the answer to that is in the example, at least in part, itself. A broken hip, if that's what the plaintiff is alleging, is a temporary condition which won't amount to a handicap under the Fair Housing Act. And I think that that also draws to the fore the distinctions between the Americans with Disabilities Act and the Fair Housing Act. And in particular, in the Americans with Disabilities Act, there is a substantial amount of time spent in the statute itself discussing precisely what a defendant in an Americans with Disabilities Act case can obtain by way of medical records and what they can do with those records. And the Fair Housing Act contains no analogous provision. And so what we take that to mean is that a defendant in a Fair Housing Act case is simply not entitled to question the existence of the condition itself. And the case law that's out there, and I will grant you that the significant majority of it involves Americans with Disabilities Act, but let's take the Supreme Court case in Bragdon as an example. And in that case, the question was, did the plaintiff's HIV amount to an impairment? Even in that case, where the HIV would have been a physical as opposed to a mental condition, there was never a dispute that, in fact, the condition existed. And the framework that the Supreme Court sets up for determining whether an impairment is actionable starts from the postulate that the condition exists. In the cases cited by the parties, all but one of them, the parties or the court assume the existence of the condition itself. And the one case that stands out as being different from the others is Emerson v. Northern States Powers, which is a decision of this court, I believe, from 2001. And in that case, the defendant points to an exam performed by its own doctor, saying that the plaintiff's test results were within the normal range. And in that case, although the plaintiff lost, this court affirmed the idea that that testimony was still not enough for the defendant to avoid summary judgment on the issue of disability in that case. So there just, I don't think, is a basis in the Fair Housing Act for a defendant like Union Square or in the case law for a defendant in a Housing Act case like Union Square to come in and challenge whether or not the specific condition exists. With that said, Union Square complained at the district court and here that we essentially are saying that they're not entitled to a defense, and that's not true. And there's a couple of ways that a defendant like Union Square can still defend the case, even if I'm correct. And the first is, let's say that Mrs. Geraci had gone to a podiatrist to obtain her diagnosis that she has post-traumatic stress disorder. That person would be unqualified to render the diagnosis. Or alternatively, if Dr. Goggin, who was a diagnosing psychologist in this case, had had her license suspended or revoked, that would be a basis potentially to challenge the existence of the condition. By the same token, it would have been, and we say it in our briefing in both the opening and reply brief, it would have been wholly proper for Union Square's expert witness to opine that Mrs. Geraci's functioning did not rise to the level of a substantial impairment by comparing her functioning to the functioning of average individuals in the general population. And he doesn't do that. In fact, he admits that he was retained for the purpose of determining whether or not Mrs. Geraci had the condition with which her own treating psychologist had diagnosed her. And that is improper. There was no basis in the law for that. And there still is not. And this Court, I would urge, should not create any rule that would allow a defendant in a Fair Housing Act case to put forward that defense absent some action from Congress. And again, the differences between what the Americans with Disabilities Act allows and what the Fair Housing Act allows must mean something. And the extensive discussion of how and when an ADA defendant may obtain medical information compared to the nonexistent discussion in the Fair Housing Act case I think is dispositive on that point. So I want to, if that answers the Court's question, I want to turn to the Section 3617 retaliation claim. And in this case, we suggest that there are three elements to a claim for retaliation under Section 3617 of the Fair Housing Act when the plaintiff requests an accommodation under Section 3604 F3. Would you tell us what evidence was presented that the litigation updates and the forum veered beyond the factual recitation of the public record and into conduct that would coerce or intimidate? Well, so the response to that question is the fact that these things were done at all is itself coercive. And to illustrate that point, this association at the time of this litigation, at the time of this trial, had been in existence for 15 or 20 years and had been involved in litigation, in fact, involving the Geracies in the past. And never once in the history of that litigation had anything like, or the history of the association, had anything like this ever happened. And Union Square points out, well, at the time, you know, there were all of these lawsuits pending between the association and the Geracies, but those lawsuits were filed in January of 2014. This case was filed in March of 2014. I mean, I think the important fact would be, was there any information that was disclosed that was not already a matter of public record by the very filing of the lawsuit? The short answer to that question, I think, is probably no. However, I also think, and Union Square, I think, makes that argument. I think on some level it's disingenuous to say that a resident in this association is going to go to the court and pull out a copy of the complaint or is going to have a PACER account and actually look these things up. I would also point out that even if you're disseminating public information, to create an environment that is openly hostile, to video record it, to incite sentiment that is negative towards the Geracies, the Trehali Geracies in particular, because she filed a complaint, itself is violative of the Fair Housing Act. But you see, it seems to me that the condominium owners have an interest in the lawsuit and that the condominium association would be required to keep the owners informed of the litigation. What I'm trying to get to is what evidence is there that the conduct went beyond that. Well, so to take up the first part of that question, the association certainly has an obligation to keep its owners informed, especially when those owners ask. But there are ways of doing it that the association has used in the past, simply responding to inquiries by email or through its counsel or through the 22.1 disclosures. There was absolutely no need to do the things that it did. To answer the second part of the question, the litigation updates themselves qualify the relief that this lawsuit asked for in a way which we think was intentionally misrepresented what had been asked for. So, for instance, the litigation updates say that Mrs. Geracy wants an elevator for her sole and exclusive use, which is not the relief that had been prayed for in the complaint. The complaint asked for a key so that she could ride an elevator down only, not up, or the posting of a sign, or the changing of the rule. And so when you put forth in writing an exposition of what the complaint is seeking that goes beyond, that misrepresents the complaint, that conduct. Does the record show whether there was a service elevator? It does and there is not. So the main building has two elevators, both are passenger, and then the small building, the Roloff building, has one elevator. There is no service elevator in either building. The Geracy's, of course, live in the larger building with the two elevators, and Mrs. Geracy's son lives in the other. And I believe I'm in my rebuttal time, so I would like to reserve my remaining time for rebuttal. Thank you. Certainly, counsel. Thank you. Mr. Miller. Thank you, Your Honors. And may it please the court. Graham Miller on behalf of the defendants in the Apolli Union Square Condominium Association. I suppose I would like to begin just by addressing the question that Your Honor had, Judge Rovner, that there certainly wasn't anything in the litigation updates or that came up at the meeting in May of 2015 that went beyond what was contained in the public record via the filing of the lawsuit. And if you look at the testimony and the evidence that actually was elicited at trial, the plaintiff's primary concern, she testified, and what made it a big deal, she said, was that this information about her came out during this May of 2015 meeting or through these litigation updates. But the fact of the matter is, and I think I actually, in my brief, I cited to a website, where after the filing of this complaint, you could Google search the plaintiff at Union Square, and this information would come up on the Internet. And I'd like to also set out that because plaintiffs just argued that these litigation updates went above and beyond simply apprising the association of what was going on with these lawsuits, that the litigation updates weren't entered into evidence at trial. And there was very limited testimony about it. Primarily it was from the association's general counsel, who testified that there was very basic information, the name, the parties, what was alleged, and whether the association was going to defend it. So again, and I think this ultimately goes to whether or not the conduct that's complained of could rise to the level of what is contemplated by Section 3617. And I don't think that there is any support for that in how this court, or how the district courts as well, have adjudicated these types of claims. I want to ask you this. Why should a retaliation claim require a plaintiff to prove that she could succeed on the underlying discrimination claim on the merit? Doesn't a retaliation claim, such as Section 3617 addresses, address a fundamentally different issue than the failure to accommodate? In that, it is focused on preserving the process, not in redressing the underlying discrimination claim. Well, I think that it can. And I think that the court has stated that you're not always going to have to prove a 3604 claim to establish a 3617 claim. But I think that the 3617 still requires that the person who was exercising the right, and 3617 refers specifically to the rights of 3604, that the person who is exercising the right was somebody who was intended to be protected by the FHA, which means in this case that the person has to actually be a member of a protected class. And so in order to establish the 3617 claim, there has to at least, and in this case, there was a possibility that you could have a 3617 claim, but not a successful 3604 claim because Union Square actually is one of the arguments that they made, argued that this request was not actually denied. And in that case, the plaintiff could have established if she had met all of the other elements of the 3617 claim as this court has delineated them. She could have established a 3617 claim without in fact being successful on the 3604 claim. But I think the problem with the 3617 claim in this case was, or at least what's at issue, and what the plaintiff is claiming is that she didn't have to prove that she was somebody who was intended to be protected under 3617, part of a protected class. And I think that that is how this court has understood the elements of a 3617 claim. Both Block v. Officials and East Miller v. Lake County Highway list four elements to such claims, the first being that the individual is protected under the FHA and has gone on to evaluate that in both Block and East Miller, saying even though those weren't specifically at issue in that case, this court went on to say that in Block it was the plaintiff clearly meeting the first two elements and that they are Jewish and then they lived in the condo units they purchased. And East Miller says the same thing. She's met the first two elements of the prima facie case because she's African American and she has exercised her fair housing rights. And those cases specifically provide for protecting the process in the second element, which is that the plaintiff has to be engaged in the exercise or enjoyment of her fair housing rights, but also require that the individual is someone who was intended to be, in the class of persons, intended to be protected by the FHA. And I think that that's consistent with the policy considerations behind the FHA, which again was in this court's language not intended to turn every quarrel between neighbors into a federal litigation, but it was intended to address access to housing for specific classes of individuals who have historically been discriminated against in that area. But you know, here, even if we considered the Block requirement of establishing that she was a protected person, doesn't that just require evidence that she is a person with a good faith claim that she possesses a handicap that was not accommodated? I'm sorry, I had a problem hearing the last part of that, Your Honor. Let's see, what I'm trying to get at is, even if we do consider, you know, Block and the requirement of establishing that she's a protected person, that would just require, it seems to me, that would just require evidence that she's a person with a good faith claim that she possesses a handicap that wasn't accommodated by Union Square. Right, well I agree, and the question that the plaintiff is raising on appeal is saying that she didn't have to prove that she in fact had a handicap, and saying she didn't, that whether or not she had a handicap was irrelevant, and that she could succeed under 3617 whether or not she had a handicap. I'm not sure that you are stating that. I thought that what was argued was that she is a person with a good faith claim that she possesses a handicap. And that was argued by the plaintiff, but that's not what, in my opinion, is what is required for a 3617 claim. The good faith language, I think, the good faith belief comes from a different provision of the ADA that this Court has said for retaliation claims, which is different than an interference claim, because the ADA has both a retaliation claim for opposing complaints or bringing to light discrimination, and what this Court has said is that the plaintiff doesn't have to actually be a member of the protected class, they just have to have a good faith basis that the reason that the adverse action was taken against them was because of discriminatory purpose or because they brought that to light. Right. In other words, the ability to succeed on the underlying discrimination claim isn't the proper focus for retaliation claims. Well, see, but that, Your Honor, is a different provision of the ADA, and that is where the Court has said, well, for these... But I'm talking about the FHA. Nothing in the language of the FHA would support requiring that here. Well, I would argue, Your Honor, that in 3617, which specifically refers to 3604, and I don't think that it's disputed that 3604, the rights there are targeted to individuals who are members of specific classes that the FHA was intended to protect. So the language that it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected by Section 3604, the Court should look back to 3604 where it says that it is illegal to discriminate against persons because of their handicap. So, again, I don't think, there is no good faith language anywhere. The way I view 3604 is that it focuses on the discrimination and accommodation, and necessarily would require an examination of the handicap, whereas 3617 focuses on the retaliatory conduct for her exercise of her right to pursue her FHA claim. And as to that claim, I have not, I'll go back and look again, but I haven't seen anything in the language that indicates she has to be able to succeed on the underlying claim. She needs to just demonstrate that she had a good faith basis to believe she was a protected person under the FHA. Your Honor, I would say that 3617 was meant to protect interference with people who are, in fact, covered under the FHA. There's no language about good faith basis anywhere in 3617 either, and a handicap is defined as a person with an impairment that substantially affects one or more major life activities, not, or a person who, in good faith, believes that they have an impairment that substantially affects one or more major life activities. And the, and again, going back to the original policy behind the FHA, which was limited and targeted toward access to housing for historically discriminated against classes, it would make sense that 3617 would require the person to actually be a member of one of those classes in order to have a claim under the FHA. Otherwise, there are other, there are state law, tort, and statutory avenues for which they could pursue such a claim if there's, if the plaintiff is saying, well, I've been unfairly treated. If that answers that question, Your Honor, with my remaining time, I would like to address the second issue, which, briefly, which is whether or not the plaintiff, whether or not the defendant is allowed to challenge the claimed impairments at trial. And I just want to be clear, the specific allegation of error here was the objection made at trial that once the plaintiff's physician testified that she had an impairment, that the defendant was, therefore, had to concede that part of the handicap provision that the plaintiff was required to prove. I want to also highlight that there was never a Dahlberg motion in the district court. That issue was raised for the first time in reply. So I believe that the, that this court will evaluate that issue as an abuse of discretion. And the court didn't abuse its discretion in that regard. There's not a single case cited by the plaintiff that I've been able to find that says a defendant cannot challenge the impairment portion of what they have to prove for a handicap. And I think Mr. Parker brought this up with respect to the Emerson case. Plaintiff's primary theory in this regard, I think, relies on Kroka and the case that says that medically diagnosed mental conditions are impairments, and that's under the ADA. But the Emerson v. North State's power actually cites Kroka for that proposition, but goes on to talk about how the plaintiff had three different physicians who diagnosed her with varying degrees, many different impairments with varying degrees of severity. And what the court went on to do was say that while the defendant also had a physician who disputed that impairment, that was not enough. That created an issue of fact that would be evidence that the jury could find that the Emerson plaintiff suffered from no impairment. And that's the exact same situation you have in this case, where impairment is an issue. You have multiple physicians testifying, and it's left to the jury to decide whether the particular impairment that the plaintiff had rose to a level of a handicap. I would like to thank the court for its time. Thank you, counsel. Anything further, Mr. Parker? Yes. So I would like to briefly go back to Judge Rovner's question about the litigation updates in the meeting and point out that in the record there is also testimony from Ms. Fitzpatrick, another resident, about a meeting that occurred in April of 2016, while this case was pending, at which the board president stated that they had offered to resolve the dispute, quote, many, many times with the juracies, and that, in fact, Ms. Juracy disputes that that was a true statement and that they had ever offered to settle this dispute at all, much less many, many times. And that conduct, I think, also goes beyond the pale of what's allowable for a condo association to do, even in the face of litigation. The next issue I want to touch on is this idea that we could have prevailed on the retaliation claim, and I happened to print this morning the jury instruction on the retaliation claim, and it says, element one, Ms. Juracy has a handicap. So how Union Square can argue that there would have been any avenue to our success in this case based on that instruction and given our objection to that particular portion of the instruction in the trial court is beyond me. There would have been no way for us to prevail on that claim in the district court because of how the instruction was given. And the instruction was improper for all of the reasons that we've previously argued. The next point, and on that same, in that same vein, is this idea that, you know, Mrs. Juracy only needs to have a good faith belief that she is in a protected class. And I think I heard counsel say that he agreed with that, and I think that that ends the case, at least with respect to that element. This court, even in Block, stated that Title VIII is the equivalent of Title VII of the Civil Rights Act. And the case law in Title VII, in fact, the Block case cites de Senso for the proposition or for the elements that a plaintiff must put forth in order to prove a claim for retaliation. And that is not that the plaintiff otherwise be protected, but that the plaintiff have a good faith belief that the conduct being challenged was illegal. And so what that means in a case like this is that if a plaintiff under Section 3617 claim has a good faith belief that they're challenging illegal conduct, either because they themselves are handicapped or somebody for whom they're advocating is handicapped, then that is enough to get to a jury. And I would point out that Union Square's argument fails to explain how Section 3617 has any meaning independent from Section 3604 if they're correct. The other thing that they fail to address is the difference in the language between 3604 A and B and 3604 F itself. And one of the cases that they cite, which is the Rodriguez case from the Second Circuit, looks at the differences between 3604 A and B and 3604 C and points to the differences between the words because and on account of and based on. And those words must mean something, and they mean something here. Thank you, Counselor. Time is up. Thank you very much. The case is taken under advisement.